IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SMITH, | ) | CASE NO. 1:12-CV-459 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying William Smith's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons that follow, the undersigned AFFIRMS the decision of the Commissioner.

I. PROCEDURAL HISTORY

On November 24, 2008, Plaintiff William Smith ("Plaintiff" or "Smith") applied for Supplemental Security Income benefits. (Tr. 57, 100-03). Plaintiff originally alleged he became disabled on December 30, 2007, but later amended his onset date to November 24, 2008. (Tr. 100, 32-33). Smith alleged he was disabled due to suffering from social phobia, hypertension, migraine headaches, arthritis, irritable bowel syndrome, hepatitis C, seizures and an enlarged prostate. (Tr. 139). The Social Security Administration denied Smith's application initially and upon reconsideration. (Tr. 61-67). Thereafter, Plaintiff requested a hearing before an

administrative law judge to contest the denial of his application. (Tr. 68). The administration granted Smith's request and scheduled a hearing. (Tr. 71-83).

On September 9, 2011, Administrative Law Judge Edmund Round (the "ALJ") convened a hearing to evaluate Plaintiff's application. (Tr. 27-56). During the proceeding, the ALJ heard testimony from Plaintiff and Vocational Expert, Bruce Holdereed (the "VE"). (*Id.*). On October 11, 2011, the ALJ issued an unfavorable decision finding Smith was not disabled. (Tr. 12-21). The ALJ applied the five-step sequential analysis,[1] and determined Plaintiff retained the ability to perform work which existed in significant numbers in the national economy. (*Id.*).

Following the issuance of this decision, Smith sought review of the ALJ's decision from the Appeals Council. (Tr. 8). In conjunction with his request, Plaintiff submitted a Medical

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Source Statement from his psychologist, Dr. Cherie Bagley, dated September 6, 2011, to the council for review. (Tr. 6-7). However, the council ultimately denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Smith now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 1383(c).

## II.  PERSONAL BACKGROUND

Smith was born on April 10, 1954. (Tr. 58). Accordingly, under the applicable regulations, he was considered as a person "closely approaching advanced age" at the time he applied for benefits. *See* 20 C.F.R. § 416.963(d). Plaintiff later progressed into the "advanced age" category after he turned 55 years of age. *Id*. at (e). Smith graduated from high school and completed an electrical apprenticeship in 1984. (Tr. 143-44). He has past experience working as an electrician at various exertional levels and capacities. (Tr. 48-50).

## III.  ALJ's RULING

The ALJ made the following findings of fact and conclusions of law:

1. Mr. Smith has not engaged in substantial gainful activity since November 24, 2008, the application date.

2. Mr. Smith has the following severe impairment:  social phobia.

3. Mr. Smith does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Mr. Smith retains the following residual functional capacity. He has no exertional limitations. He is limited to low-stress tasks that are not performed in public and that require no interaction with the public. He is limited to tasks that require no more than superficial interaction with coworkers and supervisors. He is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

5. Mr. Smith is unable to perform any past relevant work.

3

. . .

9. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Smith can perform.

10. Mr. Smith has not been under a disability, as defined in the Social Security Act, since November 24, 2008, the date he filed the application.

(Tr. 14-21) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that

4

determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff objects to the Commissioner's decision on two grounds. Plaintiff's first assignment of error maintains the ALJ improperly evaluated the medical evidence of record, including the opinions of Plaintiff's treating physicians. Second, Smith argues that the vocational expert's testimony was not sufficient to sustain the ALJ's ruling at step five of the analysis.

### 1. ALJ's Review of the Evidence

#### a. Migraines

Plaintiff accuses the ALJ of failing to consider the impact of his migraines despite numerous physicians documenting Plaintiff's frequent problems with this ailment. Smith contends that several of his physicians, including his treating psychologist, Dr. Cherie Bagley, acknowledged his problems with migraines. Yet, Smith contends the ALJ simply failed to consider any of this evidence.

5

Plaintiff's argument lacks merit. The ALJ clearly contemplated Plaintiff's problems with migraine headaches in assessing Plaintiff's disabled status. Although an ALJ is not required to discuss every piece of evidence contained within the record, *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004), here, the ALJ explicitly discussed Plaintiff's migraine headaches. At step two of the analysis, the ALJ affirmatively concluded that Smith's migraines did not rise to the level of being severe as defined by the regulations. (Tr. 14).

Smith appears to take issue with this finding, but doing so is to no avail. An ALJ's failure to label one of the claimant's conditions as severe will not constitute reversible error so long as the ALJ determines that the individual has at least one severe impairment and continues to evaluate both the claimant's severe and nonsevere impairments during the remaining steps of the analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the ALJ ruled Smith suffered from the severe impairment of social phobia. (Tr. 14). After making this finding, the ALJ considered Plaintiff's migraines at the latter stages of the sequential analysis. For example, in discussing the medical opinion evidence the ALJ noted that the Division of Disability Determination based their findings on Plaintiff's diagnoses of hypertension and migraines. (Tr. 18). Accordingly, even if improper, the ALJ's failure to label Smith's migraines as a severe impairment did not constitute harmful error because the ALJ considered the condition at the latter stages of his analysis despite its nonsevere status. *See Maziarz*, 837 F.2d at 244.

b. Panic Attacks

Smith also claims the ALJ failed to consider his problems with panic/anxiety attacks, but this argument fails for the same reasons spelled out above. Though Smith contends the ALJ did not consider his anxiety attacks, the record demonstrates otherwise. The ALJ's discussion of

6

Plaintiff's medical treatment references Smith's panic attacks several times. (*See* Tr. 17-18). The ALJ's recitation of the medical evidence referring to Plaintiff's panic attacks reasonably demonstrates that the ALJ was aware of Plaintiff's panic attacks and contemplated them in his review of the evidence. Furthermore, the ALJ's later discussion of this evidence militates against any possible argument that the failure to label this impairment as severe at step two constituted reversible error. *See Maziarz,* 837 F.2d at 244.

### c. Medical Opinion Evidence

#### i. Treating Physicians

Pursuant to the Social Security regulations, an ALJ must give special attention to opinions from a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule" recognizes that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. § 416.927(c)(2). Accordingly, opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. Even when a treating source's opinion is not entitled to controlling weight, the regulations require the ALJ to consider certain factors in determining how much weight to assign to the opinion. *Id*. The regulations also demand the ALJ to provide "good reasons" for the weight ultimately given to a treating source's opinion. *Id*.

In March 2009, Dr. Bagley completed a form assessing Smith's mental health. (Tr. 790-91). In the document, Dr. Bagley noted Plaintiff was diagnosed with social phobia, hypertension, migraines and hepatitis C. (Tr. 790). Dr. Bagley further commented that Smith

7

had "anxiety attacks and migraines which contribute[d] to his social isolation." (*Id.*). In addition, the form asked Dr. Bagley to indicate by way of a checkmark whether Plaintiff struggled with certain tasks. (Tr. 791). In this section, Dr. Bagley indicated Smith suffered from the following:

- Unable to remember tasks that need to be completed. (Memory)

- Difficulty keeping things organized. (Organizational Skills)

- Has difficulty communicating needs. (Communication & Social Interaction)

- Has difficulty with change or new routines. (Adaptive Skills)

- Sometimes uses poor judgment. (Self Direction)

- Has limited work history due to illness. (Symptom Management/Coping)

- Has difficulty remembering complex task [sic]. (Cognition)

- Needs a "hands on" approach to learning. Needs instructions given in 1 or 2 steps at a time. (Concentration/Cognition)

- Has difficulty dealing with stressful situations. (Stress Tolerance)

(*Id.*).

Then, in September 2009, Dr. Bagley completed a Medical Source Statement evaluating Smith's mental capacity. (Tr. 788-89). The psychologist opined that Smith had a "good" or "fair" ability to: follow work rules; use judgment; maintain attention and concentration for extended periods of two hour segments; respond appropriately to changes in routine settings; maintain regular attendance and be punctual within customary tolerance; deal with the public; relate to co-workers; interact with supervisors; function independently without special supervision; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stresses; understand, remember and carry out simple and detailed, but

8

not complex, job instructions; maintain his appearance; socialize; behave in an emotionally stable manner; relate predictably in social situations; manage funds/schedules; and leave home on his own. (*Id*.). However, she noted Plaintiff had a "poor" ability to: complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and to understand, remember and carry out complex job instructions. (Tr. 789). Dr. Bagley further commented that Smith was anxious, suffered from social isolation and complained of memory loss. (*Id*.).

Finally, in September 2011, Dr. Bagley completed a second Medical Source Statement assessing Smith's mental capacity. (Tr. 873-74). Dr. Bagley's findings largely mirrored her findings issued in the assessment from September 2009 with a few exceptions. The doctor noted Plaintiff's abilities in the following areas had deteriorated from "good" or "fair" to "poor" in the following areas: working in coordination with or proximity to others without being unduly distracted or distracting; dealing with work stress; understanding, remembering and carrying out simple and detailed job instructions; and socializing. (*Id*.). However, Dr. Bagley also found that Plaintiff's condition had improved in several areas including: completing a normal workday and work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; maintaining his appearance; and leaving home on his own. (*Id*.).

In the instant case, the ALJ did not specify the amount of weight he attributed to Dr. Bagley's findings. However, a reading of the decision reveals that the ALJ did not afford controlling weight to the doctor's opinions. The question therefore, is whether the ALJ supplied good reasons for the weight he assigned to the doctor's findings. With respect to Dr. Bagley's

9

reports issued in March and September of 2009, the ALJ explained that the checklist completed by the doctor in March[2] was not very helpful because it did not allow Dr. Bagley to quantify the degree to which Smith was limited in each area evaluated. (Tr. 19). Additionally, the ALJ found that Plaintiff's admitted ability to perform some types of work (i.e. on the computer) and the absence of any diagnosis of a neurocognitive defect made Dr. Bagley's opinions less persuasive, particularly the doctor's finding that Plaintiff required a "hands on" approach to learning. (*Id*.). Plaintiff did not present any arguments attacking these reasons put forth by the ALJ. Accordingly, the Court finds these are sufficiently good reasons for the ALJ's decision to assign less than controlling weight to the doctor's opinions.

However, Smith challenges a different aspect of the ALJ's evaluation of Dr. Bagley's opinion. Aside from finding that Smith had a poor ability to complete a normal work week or workday without interruptions from psychologically based symptoms, the ALJ highlighted that Dr. Bagley's September 2009 findings generally showed that Smith's psychological functioning was no worse than fair. The ALJ then commented, "[i]t is reasonable to conclude that Dr. Bagley had in mind a workplace with a lot of personal interaction because Mr. Smith has demonstrated the ability to function in a more solitary environment." (Tr. 19). Plaintiff argues that this conclusion is unsupported.

Unfortunately for Plaintiff, there is little utility in presenting this argument. Even if the undersigned agreed that the ALJ's conclusion was an unreasonable assumption – a decision the undersigned does not reach today—the ALJ's overall analysis of Dr. Bagley's opinion remains sound. Plaintiff did not present any arguments challenging the other reasons the ALJ provided

---

[2] The ALJ incorrectly identified this report as being penned on April 18, 2009, (Tr. 18), but the record clearly shows that it was actually signed on March 18, 2009. (Tr. 791).

for discounting Dr. Bagley's opinion. Thus, even if this allegedly *improper* reason were struck from the ALJ's decision, the ALJ's evaluation of the doctor's findings would stand as there are "good reasons" for the ALJ's decision to attribute less than controlling weight to Dr. Bagley's opinion. Accordingly, the undersigned sees no reason to disturb the ALJ's ruling on this issue.

Plaintiff also appears to accuse the ALJ of ignoring Dr. Bagley's Medical Source Statement dated September 6, 2011. Yet, as the Commissioner correctly pointed out, this report was not part of the record presented to the ALJ. Smith first introduced this evidence at the administrative appellate level when she submitted it to the Appeals Council seeking review of the ALJ's decision. (Tr. 1-7, 873-74). The Appeals Council declined Plaintiff's request to review the ALJ's decision, and subsequently denied Plaintiff's request to reopen and change the ALJ's decision based on consideration of this evidence. (*Id.*).

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Instead, if the claimant can show that the evidence is new, material and that there was good cause for his failure to present the evidence to the ALJ, the court may remand the case pursuant to sentence six of 42 U.S.C. § 405(g). *Id.* (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). Consequently, because Dr. Bagley's 2011 assessment was not before the ALJ, the undersigned cannot consider it in its evaluation of the ALJ's opinion. In addition, Plaintiff has not shown that the report was new or material, or that good cause exists for his failure to present it to the ALJ in order to trigger remand under sentence six of 42 U.S.C. § 405(g).

Next, without providing any supporting argumentation, Plaintiff cites to a Medical Source Statement completed by Dr. Amal Rubai, and suggests that the ALJ ignored the report and thereby violated the treating source doctrine.  But, "[i]t is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)).  Here, Plaintiff's brief lacks any explanation of how the ALJ erred in examining Dr. Rubai's opinion.  Thus, Smith has waived any objection to the ALJ's consideration of such.  Notwithstanding, the Court finds the ALJ provided a reasonable analysis of the doctor's opinion.  The ALJ explained that he gave the opinion "less weight" because the doctor opined on issues outside of his area of expertise as an internist, and because his opinion was not supported by the medical evidence of record.  Such explanation is sufficient, particularly given Plaintiff's deficient objection to the ALJ's ruling on this ground.

### ii. State Agency Reviewers

Smith also takes issue with the ALJ's treatment of the opinions issued by the state agency examiners.  But, these tenuous attacks also fail.  First, Smith accuses the ALJ of ignoring the opinions of Dr. Irma Johnston who concluded Smith was "moderately limited" in certain areas of mental functioning examined in the doctor's Mental Residual Functional Capacity Assessment.  (Tr. 364-67).  However, Plaintiff failed to explain how these "moderate limitations" warranted greater restrictions than those imposed by the ALJ.  The Court notes that the ALJ holds the exclusive responsibility of determining the claimant's residual functional capacity ("RFC").  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  Here, the moderate limitations identified by Dr. Johnston were contained within Section I of her

Mental Residual Functional Capacity Assessment form. (Tr. 364-65). But, an ALJ is not required to incorporate the limitations outlined in Section I within his RFC finding. *Coleman v. Astrue*, No. 3:10cv0464, 2010 WL 4955718, at *7 (N.D.Ohio Nov. 18, 2010) (*R&R adopted*, 2010 WL 4955707) (citing *Velez v. Comm'r of Soc. Sec.*, No. 1:09cv0715, 2010 WL 1487599, at *6 (N.D.Ohio Mar. 26, 2010)). Rather, the RFC determination is recorded in Section III of the form. *See id*.

In Section III of her report, Dr. Johnston indicated that Plaintiff was capable of performing work of all complexity levels so long as Smith had limited interaction with co-workers and no interaction with the public. (Tr. 367). Accordingly, the ALJ restricted Plaintiff to low-stress tasks involving no interaction with the public and only superficial interaction with co-workers and supervisors. (Tr. 16). Thus, the ALJ clearly considered and accepted Dr. Johnston's findings regarding Plaintiff's RFC.

Finally, Smith challenges the ALJ's ruling that he has no exertional limitations. Plaintiff points to the physical RFC assessment completed by state agency reviewer, Dr. Walter Holbrook, wherein the doctor restricted Plaintiff's exertional abilities. (Tr. 630-37). Notably, Dr. Holbrook opined Smith was limited to lifting 50 pounds occasionally and 25 pounds frequently – findings equivalent to the regulations' definition of "medium work". (Tr. 631); 20 C.F.R. § 404.1567(c). Smith contends the ALJ erred by failing to accept these restrictions, and instead employing his own judgment of Plaintiff's physical abilities in finding that Smith had no exertional limitations.

Plaintiff's argument is unavailing. Though the ALJ's RFC indicates Smith retains greater abilities than that which Dr. Holbrook indicated, any harm caused by this error was nullified by the ALJ's step five finding. At step five, the ALJ concluded Plaintiff could perform the positions

of a lab equipment cleaner, salvage laborer and hand packager. (Tr. 20). During the hearing, the VE testified that each of these positions was performed at the medium exertion level. (Tr. 52-53). Thus, even if the ALJ had restricted Plaintiff to medium level work as Dr. Holbrook suggested, such a change would not have affected the ALJ's ultimate ruling. Consequently, remand on this basis would be futile.

## 2. Vocational Expert Testimony

Lastly, Smith contends that the ALJ's decision is not supported by substantial evidence because it was based upon testimony elicited from the vocational expert in response to an improper hypothetical question which failed to account for Plaintiff's migraine headaches and anxiety attacks. Smith notes that the VE's testimony identifying jobs which a hypothetical person, such as Smith, could perform was based on a question framed by the ALJ which did not reference Smith's anxiety attacks, migraine headaches or the effects either caused. On the other hand, Plaintiff notes that his counsel posed a hypothetical question to the VE inquiring about whether an individual who "secondary to migraine headaches and/or other psychological symptoms would [] miss[] about two to three days a month" was employable. (Tr. 53). In response, the VE testified that there would be no work available for such a person. (Tr. 54).

The VE's response to the ALJ's hypothetical question provides substantial support for the ALJ's decision. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). As previously discussed, the ALJ considered Plaintiff's anxiety attacks and migraine headaches and reasonably concluded that neither constituted as a severe impairment. Although Plaintiff noted several instances of doctors

14

acknowledging his problems with these ailments, noticeably absent from Plaintiff's brief is any reference to where one of his physicians indicated such problems would cause him to be absent from work two to three days each month.  While a hypothetical question must accurately portray the claimant, it need not include the claimant's unsubstantiated claims.  *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In light of Plaintiff's failure to identify any medical evidence reflecting that his ailments would cause him to miss two to three days of work monthly, the ALJ was justified in omitting this limitation from his hypothetical question.  As a result, the ALJ was also free to disregard the VE's testimony in response to counsel's hypothetical question which included this restriction.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  March 25, 2013.